IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

---------------------------------------------------

| | | |
|---|---|---|
| ELIZABETH MITCHELL, individually and as Personal Representative/ Administrator/ Executor of the Estate of KEVIN MITCHELL, deceased, | : : : : : | MDL NO. 2873 Master Docket No: 2:18-mn-2873 |
| Plaintiff, | : : | JUDGE RICHARD GERGEL |
| v. | : : | Civil Action No:    2:22-cv-4197-RMG |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company); AGC CHEMICALS AMERICAS INC.; AMEREX CORPORATION; ARCHROMA U.S., INC.; ARKEMA, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CHEMICALS, INC.; CHEMOURS COMPANY FC, LLC; CHUBB FIRE, LTD; CLARIANT CORP.; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; DU PONT DE NEMOURS INC. (f/k/a DOWDUPONT INC.); DYNAX CORPORATION; E.I. DU PONT DE NEMOURS AND COMPANY; KIDDE-FENWAL, INC.; KIDDE PLC; NATION FORD CHEMICAL COMPANY; NATIONAL FOAM, INC.; THE CHEMOURS COMPANY; TYCO FIRE PRODUCTS LP, as successor-in-interest to The Ansul Company; UNITED TECHNOLOGIES CORPORATION; UTC FIRE & SECURITY AMERICAS CORPORATION, INC. (f/k/a GE Interlogix, Inc.); and ABC CORPORATIONS (1-50), | : : : : : : : : : : : : : : : : : : : : : : : : : : : : | **COMPLAINT AND JURY DEMAND** |
| Defendants. | : | |

---------------------------------------------------

Plaintiff, Elizabeth Mitchell, individually and as personal representative/administrator/executor of the Estate of Kevin Mitchell ("Decedent"), by way of Complaint against the Defendants alleges and says:

## INTRODUCTION

1.    Plaintiff brings this action for damages for personal injury and death resulting from Decedent's exposure to aqueous film-forming foams ("AFFF") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.    AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.    Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF with knowledge that it contained highly toxic and bio persistent PFASs, which would expose end users of the product to the risks associated with PFAS. Further, defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

4.    PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

#13501899.1

5.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

6.      Defendants' PFAS-containing AFFF products were used by the Decedent in their intended manner, without significant change in the products' condition. Decedent was unaware of the dangerous properties of the Defendants' AFFF products and relied on the Defendants' instructions as to the proper handling of the products. Decedent's consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF products caused Decedent to develop the serious medical conditions and complications alleged herein including death.

7.      Through this action, Plaintiff seeks to recover compensatory, consequential and punitive damages arising out of the permanent and significant damages sustained as a direct result of Decedent's exposure to Defendants' AFFF products at various locations during the course of Decedent's training and firefighting activities. Plaintiff further seeks injunctive, equitable, and declaratory relief arising from the same.

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332(a)(1), because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

9.      Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Westerna District of New York.  Further, in accordance with CMO 3, Plaintiff designates the United States District Court for the Western District of New York as the home venue. Venue is originally proper in the District Court pursuant to 28 U.S.C.

#13501899.1

§1391 because it is the judicial district in which Decedent was a resident and/or citizen, a substantial part of the events or omissions giving rise to the claims occurred, and Defendants conduct business within the district.

## PARTIES

10.    Plaintiff, Elizabeth Mitchell, ("Plaintiff") is an adult resident of New York. Plaintiff is the personal representative/administrator/executor of the Estate of Kevin Mitchell.

11.    Kevin Mitchell ("Decedent") was, at the time of death, an adult resident and citizen of Lewiston, New York.  Decedent regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during his working career as a firefighter.

12.    Prior to death, Decedent was diagnosed with prostate cancer and/or other medical conditions as a result of exposure to Defendants' AFFF products. These conditions caused and/or contributed to his death.

13.    Decedent passed away on June 20, 2021.

14.    Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production. The following Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Decedent during the course of training and firefighting activities.

15.    Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

4

#13501899.1

16.    3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

17.    Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business throughout the United States. AGC has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

18.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

19.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

20.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which

#13501899.1

are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

21.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

22.    Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

23.    Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

24.    Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which

#13501899.1

are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

25.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

26.     Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

27.     Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does business throughout the United States. Carrier has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

28.     Carrier designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or

#13501899.1

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

29.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

30.     ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

31.     Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

32.     Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

#13501899.1

33.     Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

34.     Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

35.     Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

36.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

37.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon

#13501899.1

information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

38.     Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

39.     Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

40.     Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

41.     Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

#13501899.1

42.     Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

43.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

44.     Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

45.     Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

46.     DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF

#13501899.1

containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

47.    Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

48.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

49.    Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

50.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

#13501899.1

51.     Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware and does business throughout the United States. Kidde-Fenwal has its principal place of business at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").

52.     Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

53.     Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

54.     Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

55.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

56.    Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

57.    Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

58.    National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

59.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

#13501899.1

60.    Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

61.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

62.    Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

63.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

15

#13501899.1

64.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

65.    Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

66.    UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

67.    ABC Corporations (1-50) are the fictitious names of corporations, companies, partnerships and/or other business entities whose identities are currently unknown, and who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF products, including those products to which Plaintiff was exposed.  These corporations are liable

#13501899.1

to Plaintiff for not only their own conduct and the conduct of their agents, employees and servants but also under respondeat superior, alter ego, agency principles and/or any corporate relationship

68.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

69.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally, unless otherwise stated.

## FACTUAL ALLEGATIONS

70.    Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fires.

71.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

72.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

73.    Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled AFFF containing toxic PFAS that were used by entities around the country, including military, county, and municipal firefighting departments.

74.    Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled

and/or used AFFF containing PFAS, in such a way as to cause the contamination of Decedent's blood and/or body with PFAS, and the resultant biopersistence and bioaccumulation of such PFAS in the blood and/or body of Decedent.

75.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

76.    PFAS are a family of chemical compounds containing fluorine and carbon atoms.

77.    PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

78.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

## A.    AFFF / PFAS Hazardous Effects on Humans

79.    AFFF and its components are associated with a wide variety of adverse health effects in humans.

80.    Exposure to Defendants' AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease and infertility.

81.    By at least the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

82.    By at least the end of the 1960s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that such materials, including at least

#13501899.1

PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

83.    By at least the end of the 1970s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

84.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

85.    It was understood by Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

86.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

87.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated

#13501899.1

incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

88.     By at least the end of the 1980s, Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

89.     By at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

90.     By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

91.     By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

#13501899.1

92.     When the United States Environmental Protection Agency ("USEPA") and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

93.     After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

94.     Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

95.     By at least the mid-2010s, Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

96.     Research and testing performed by and/or on behalf of Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

97.     Nevertheless, Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain

PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

98.    At all relevant times, Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

99.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

100.    At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

101.    As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

102.    There is no naturally-occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

103.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Decedent from discovering the existence and extent of any injuries/harm as alleged herein.

104.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

105.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Decedent to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Decedent's blood.

#13501899.1

106.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

107.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

108.    To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

109.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

110.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale

24

#13501899.1

and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the blood and/or body of Decedent with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

111.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the blood and/or body of Decedent would cause injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Decedent.

112.    Defendants did not seek or obtain permission or consent from Decedent before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Decedent's exposure to AFFF and the contamination of Decedent's blood and/or body with PFAS materials, and resulting biopersistence and bioaccumulation of such PFAS in his blood and/or body.

### B.    Defendants' History of Manufacturing and Selling AFFF

113.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s. In the 1960s, 3M used its fluorination process to develop AFFF.

114.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

115.    National Foam and Tyco/Ansul began to manufacture, market, and sell AFFF in the 1970s.

116.    Buckeye began to manufacture, market, and sell AFFF in the 2000s.

117.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management." 3M further stated that "the presence of these materials at [] very low levels does not pose a human health or environmental risk." In communications with the EPA at

that time, 3M also stated that it had "concluded that...other business opportunities were more deserving of the company's energies and attention..."

118.    Following 3M's exit from the AFFF market, the remaining Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

119.    Defendants knew their customers warehoused large stockpiles of AFFF. In fact, Defendants marketed their AFFF products by touting its shelf-life. Even after Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, Defendants concealed the true nature of PFAS. While Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. Defendants further did not act to get their harmful products off the market.

120.    Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to Defendants' AFFF products containing PFAS and/or its precursors would pose a danger to human health

121.    The Decedent directly used, was exposed, and/or was given AFFF to help fight fires on a regular basis.

122.    The Decedent was never informed that this product was inherently dangerous. Nor was the Decedent warned about the known health risks associated with this product.

123.    The Decedent never received or was told to use any protective gear to guard against the known dangerous propensities of this product.

124.    Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would harm human health.

#13501899.1

125.    Information regarding AFFF and its compounds were readily accessible to each of the above-referenced Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

126.    The AFFF Defendants' manufacture, distribution and/or sale of AFFF resulted in the Decedent and other individuals who came in contact with the chemical to develop cancer which caused or contributed to death.

127.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Decedent and those similarly situated would be harmed.

128.    The AFFF Defendants' products were unreasonably dangerous and the Defendants failed to warn of this danger.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

129.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

130.    Defendants had a duty to individuals, including the Decedent, to exercise reasonable ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the AFFF product.

131.    Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction,

training, selling, marketing, and distribution of the AFFF products in one or more of the following respects:

a. Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including the Decedent;

b. Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including the Decedent;

c. Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including the Decedent;

d. Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including the Decedent;

e. Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including the Decedent;

f. Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and

g. In selling and or distributing a product which was inherently dangerous to the public;

132.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

133.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

#13501899.1

134.     At all relevant times, Defendants possessed knowledge that the AFFF containing PFAS which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio- persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Decedent having PFAS in Decedent's blood, and the biopersistence and bioaccumulation of such PFAS in Decedent's blood.

135.     However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Decedent accumulating PFAS in Decedent's blood and/or body, and such PFAS persisting and accumulating in Decedent's blood and/or body.

136.     Defendants did not seek or obtain permission or consent from Decedent to put or allow PFAS materials into Decedent's blood and/or body, or to persist in and/or accumulate in Decedent's blood and/or body.

137.     Entry into, persistence in, and accumulation of such PFAS in Decedent's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Decedent's person and unreasonably interferes with Decedent's rightful use and possession of Decedent's blood and/or body.

138.     At all relevant times, the PFAS present in the blood of Decedent originated from Defendants' acts and/or omissions.

139.     Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or

contact with Decedent that resulted in persisting and accumulating levels of PFAS in Decedent's blood.

140.    Decedent, and any reasonable person, would find the contact at issue harmful and/or offensive.

141.    Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto and/or into Decedent's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

142.    Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Decedent's blood and/or body.

143.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Decedent is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

144.    The presence of PFAS in the blood and/or body of Decedent altered the structure and/or function of such blood and/or body parts and resulted in cancer.

145.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## **COUNT III – INADEQUATE WARNING**

146.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

147.    Defendants knew or should have known:

    a.    exposure to AFFF containing PFAS was hazardous to human health;

    b.    the manner in which they were designing, marketing, developing, manufacturing, distributing, releasing, training, instructing, promoting, and selling AFFF containing PFAS was hazardous to human health; and

    c.    the manner in which they were designing, marketing, developing, manufacturing, marketing, distributing, releasing, training, instructing, promotion and selling AFFF containing PFAS would result in the contamination of Decedent's blood and/or body as a result of exposure.

148.    Defendants had a duty to warn of the hazards associated with AFFF containing PFAS entering the blood and/or body of Decedent because they knew of the dangerous, hazardous, and toxic properties of AFFF containing PFAS. Defendants failed to provide sufficient warning to purchasers that the use of their AFFF products would cause PFAS to be released and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Decedent.

149.    Adequate instructions and warnings on the AFFF containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Decedent. If Defendants provided adequate warnings:

    a.    Decedent could have and would have taken measures to avoid or lessen exposure; and

    b.    end users and governments could have taken steps to reduce or prevent the release of PFASs into the blood and/or body of Decedent. Defendants' failure to warn was a direct and proximate cause of Decedent's injuries from PFAS that came from the use, storage, and disposal of AFFF containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the AFFF a defective product.

150.    Defendants were negligent in their failure to provide Decedent with adequate warnings or instruction that the use of their AFFF products would cause PFAS to be released into the blood and/or body of Decedent. As a result of Defendants' conduct and the resulting contamination, Decedent suffered severe personal injuries by exposure to AFFF containing PFAS.

151.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – DESIGN DEFECT

152.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

153.    Defendants knew or should have known:

a.    exposure to AFFF containing PFAS is hazardous to human health;

b.    the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

c.    the manner in which AFFF containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Decedent and cause the exposure and bioaccumulation of these toxic chemicals in the blood and/or body of Decedent.

154.    Knowing of the dangerous and hazardous properties of the AFFF containing PFAS, Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous and toxic PFAS. These alternative designs

#13501899.1

and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented reasonably foreseeable harm to Decedent caused by the Defendants' design, manufacture, marketing, distribution, and sale of AFFF containing hazardous and toxic PFAS.

155.    The AFFF containing PFAS that was designed, manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, and dangerous to human health that the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

156.    The AFFF designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous. Defendants' defective design and formulation of AFFF containing PFAS was a direct and proximate cause of the contamination of the blood and/or body of Decedent and the persistence and accumulation of PFAS in Decedent's blood and/or body.

157.    Defendants' defective design and formulation of AFFF containing PFAS caused the contamination described herein resulting in personal injuries to Decedent. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Decedent has been exposed to AFFF containing PFAS and other toxic substances and has developed cancer which caused or contributed to his death.

158.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life,

loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V – STRICT LIABILITY (STATUTORY)

159.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

160.    Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's state for strict liability against each Defendant.

161.    The Defendants were engaged in designing, manufacturing, marketing, selling, and distribution of AFFF.

162.    AFFF was in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by the Defendants.

163.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

164.    The Defendants are strictly liable in tort for their wrongful conduct.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

#13501899.1

## COUNT VI – STRICT LIABILITY (RESTATEMENT)

165.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

166.     The Plaintiff brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

167.     As designed, manufactured, marketed, tested, assembled, equipped, distributed and/or sold by the Defendants the AFFF product was in a defective and unreasonably dangerous condition when put to reasonably anticipated use to foreseeable consumers and users, including the Decedent.

168.     The Defendants had available reasonable alternative designs which would have made the AFFF product safer and would have most likely prevented the injuries and damages to the Decedent, thus violating state law and the Restatement of Torts.

169.     The Defendants failed to properly and adequately warn and instruct the Decedent as to the proper safety and use of the Defendants product.

170.     The Defendants failed to properly and adequately warn and instruct the Decedent regarding the inadequate research and testing of the product.

171.     The Defendants' products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

172.     As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

#13501899.1

173.     By reason of the foregoing, the Defendants are strictly liable for the injuries and damages suffered by the Decedent, caused by these defects in the AFFF product.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII – FRAUDULENT CONCEALMENT

174.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

175.     Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

176.     Defendants fraudulently concealed from and/or failed to disclose to or warn the Decedent, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

177.     Defendants were under a duty to the Decedent and the public to disclose and warn of the defective and harmful nature of the products because:

   a.     Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

   b.     Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

   c.     Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Decedent.

178.     The facts concealed and/or not disclosed by Defendants to the Decedent were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

#13501899.1

179.   Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that the Decedent would use the Defendants' products, the Decedent justifiably acted or relied upon, to Decedent's detriment, the concealed and/or non-disclosed facts as evidenced by Decedent's use of the Defendants' products.

180.   Defendants, by concealment or other action, intentionally prevented the Decedent from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to the Plaintiff for Decedent's pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Decedent was thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

181.   As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII– BREACH OF EXPRESS AND IMPLIED WARRANTIES

182.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

#13501899.1

183.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

184.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

185.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Decedent.

186.    The Decedent was within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

187.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use, and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, cancer and death.

188.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

#13501899.1

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT IX – WANTONNESS

189.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

190.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Decedent.

191.    Defendants breached the duty of care owed to the Decedent.

192.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF products, including Decedent.

193.    As a direct and proximate result of Defendants' conduct, Decedent was exposed to hazardous and toxic chemicals which proximately caused Decedent's injury and death, and all accompanying pain, suffering, mental anguish, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss and damages including, but not limited to medical expenses, lost income, and/or other damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT X – PER QUOD CLAIM

194.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs, sections and counts of this Complaint as if restated fully herein.

#13501899.1

195.    Plaintiff, Elizabeth Mitchell, was the legal spouse and wife of Decedent at the time of his death.

196.    As the direct and proximate result of the previously-pled wrongful acts and omissions of the Defendants, Plaintiff, Elizabeth Mitchell, has lost and will lose the services, society and consortium of Decedent and asserts any and all remedies available under any statutory or common law causes of action, or rights against each defendant.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT XI – SURVIVAL AND WRONGFUL DEATH ACTS

197.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs, sections and counts of this Complaint as if restated fully herein.

198.    Plaintiff incorporates by reference and asserts any and all remedies and rights available under any statutory or common law causes of action for survival or wrongful death claims of a decedent, or remedies or rights under any applicable and/or controlling survival or wrongful death act or statute for the continuation, perpetuation and/or institution of any claims by Decedent and/or his heirs or beneficiaries for any and all actual, compensatory, consequential, pecuniary and/or punitive damages.

WHEREFORE, the Plaintiff demands judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

#13501899.1

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

199.    Plaintiff or Decedent had no way of knowing about the risk of serious injury associated with the use of and exposure to AFFF until very recently.

200.    Within the time period of any applicable statute of limitations, Plaintiff or Decedent could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health.

201.    Plaintiff or Decedent did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiff or Decedent have disclosed that AFFF could cause personal injury.

202.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

203.    All applicable statute of limitations have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

204.    Instead of disclosing critical safety information regarding AFFF, Defendants have consistently and falsely represented the safety of AFFF products.

205.    This fraudulent concealment continues through present day.

206.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

#13501899.1

**Estoppel**

207.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Decedent, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

208.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and the serious risks associated with the use of and exposure to AFFF.

209.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

**JURY DEMAND**

The Plaintiff hereby demands a trial by jury.

Respectfully Submitted,

*/s/ Stephen T. Sullivan, Jr.*
Stephen T. Sullivan, Jr.
John E. Keefe, Jr.
**Wilentz, Goldman & Spitzer P.A.**
125 Half Mile Road, Suite 100
Red Bank, NJ 07701
Telephone: 732-855-6060
Facsimile: 732-726-4860

#13501899.1